**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| JORDAN E. LUBIN, CHAPTER 7 TRUSTEE, | : : : | |
| Plaintiff, | : : | |
| v. | : : : | CIVIL ACTION NO. 1:09-CV-1155-RWS |
| STEVEN M. SKOW, SUZANNE LONG, DOUGLAS G. BALLARD II and ROBERT F. SKEEN, III, | : : : : : | |
| Defendants. _____ | : : : | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF INTEGRITY BANK OF ALPHARETTA, GEORGIA, | : : : : : : : | |
| Plaintiff-in-Intervention, | : : | |
| v. | : : | |
| JORDAN E. LUBIN, CHAPTER 7 TRUSTEE, | : : : | |
| Defendant-in-Intervention. | : | |

# ORDER

This case is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint for Damages [Doc. 16], Defendants' Motion to Dismiss Plaintiff's Amended Complaint for Damages [Doc. 20], and Plaintiff-in-Intervention's Motion to Dismiss Plaintiff's Amended Complaint for Damages [Doc. 19]. After receiving oral argument on this matter and reviewing the record, the Court enters the following order.

**I.    Defendants' Motion to Dismiss Plaintiff's Amended Complaint for Damages [20] and Plaintiff-in-Intervention's Motion to Dismiss Plaintiff's Amended Complaint for Damages [19].**

## Background

Integrity Bancshares, Inc. ("Debtor"), the debtor in bankruptcy, is a Georgia bank holding company and parent of Integrity Bank ("Integrity" or "Bank"). (Plaintiff's First Amended Complaint ("Complaint") [Doc. 17] at ¶ 1). On August 29, 2008, Integrity was closed by the Georgia Department of Banking and Finance and placed into receivership with the Federal Deposit Insurance Corporation as receiver ("FDIC-R"). (FDIC-R's Memorandum in Support of Motion to Dismiss ("FDIC-R's Memo") [Doc. 19-1] at 3). Following the closing of Integrity, the Debtor filed a voluntary Chapter 7 petition in the United States Bankruptcy Court for the Northern District of

Georgia on October 13, 2008.  (Complaint at ¶ 6).  The Plaintiff, Jordan E. Lubin, is the Chapter 7 Trustee ("Trustee") for Integrity Bancshares, Inc. (Id. at ¶ 1).

On February 3, 2009, the Trustee initiated Adversary Proceeding No. 09-06057 by filing the original complaint against Defendants who are former directors and/or officers of the Debtor, the Bank, or both, seeking damages for breach of fiduciary duties and negligence.  On March 20, 2009, the FDIC-R sought leave to intervene arguing that it owned the claims that the Trustee sought to assert against Defendants, and the requested leave was granted. (FDIC-R's Memo at 3).

The Trustee sought and was granted leave to amend its complaint, and filed a First Amended Complaint for Damages [Doc. 17] on May 18, 2009. Defendants filed a Motion to Withdraw the Reference of Adversary Proceeding 09-06057 [Doc. 1] as well as a Renewed Motion [Doc. 4] for the same.  This Court granted the motions, withdrawing the reference of this action to the Bankruptcy Court.  (See Order of July 20, 2009 [Doc. 13]).  Defendants' and FDIC-R's motions to dismiss are now before this Court for consideration.

The Trustee's Complaint alleges that Steven M. Skow, Suzanne Long, Douglas G. Ballard, and Robert F. Skeen are liable to the Debtor for damages

3

resulting from breaches of fiduciary duty and negligence. (Complaint at ¶¶ 79, 87). While some of the Defendants were directors and/or officers of both the Debtor and the Bank and others were directors and/or officers of only the Bank, the Trustee's claims against the Defendants are based solely on their capacities as officers of the Debtor and Bank.[1] (Complaint at ¶ 8). At all times material to this action, Skow was President, CEO, and a Director of the Debtor and the Bank and was responsible for the overall management of the Bank. (Id. at ¶¶ 28, 29). Beginning from sometime in 2006, Long has been the Senior Vice President, Chief Financial Officer, and a Director of the Debtor, and was responsible for the financial operations and condition of the Debtor and the Bank including the maintenance of adequate capital levels. (Id. at ¶¶ 30, 31). As a loan officer of the Bank from October 2000 to January 2006, Ballard was responsible for closing and administering loans for the Bank. From February 2006 to December 2007, Ballard served as the Senior Vice President and Senior Lending Officer of the Bank and as a director of the Debtor and was responsible for overseeing the Bank's loan portfolio and lending activities. (Id. at ¶ 33).

---

[1] The Trustee's description of the positions occupied by the Defendants is not consistent across its pleadings (See FDIC-R's Memo at 5-8), but the following description of the Defendants positions with the Debtor and Bank is based upon the allegations set forth in the Trustee's Complaint.

4

Finally, Skeen was Executive Vice President and Senior Lending Officer at the Bank from sometime in 2002 to February 2006. (Id. at ¶ 34).

The Debtor raised the capital necessary to operate the Bank through stock offerings and bond issuances.[2] The gravamen of Plaintiff's claims against Defendants is that they harmed the Debtor holding company and imperiled the capital provided to the Bank by negligently managing the Bank's operations and thus breaching their fiduciary duty to the Debtor. The Trustee contends that the Bank's lending practices were deeply flawed. The Trustee alleges that the bank: made loans for speculative land development projects with no projected income stream; made several loans outside of the Bank's primary geographic market; closed many loans in material variance to the Bank's underwriting and loan requirements; and lent a troublesome and perhaps illegal amount of money to related borrowers. (Id. at ¶¶ 36-56).

In 2007, borrowers on several real estate loans, including many closed in violation of the Bank's underwriting and loan requirements, defaulted. (Id. at ¶

---

[2] The Bank began operation in 2000. (Complaint at ¶ 19). The initial funding for the Bank was raised through an $11,000,000 private placement of stock. (Id.). In June 2005, the Debtor raised an additional $15,000,000 from new and existing stockholders. (Id. at ¶ 22). In December 2003, the Debtor issued subordinated deferred interest debentures to U.S. Bank National Association in the amount of $6,186,000, and issued the same to Wilmington Trust Company for $27,836,000 in February 2006. (Id. at ¶¶ 23, 24).

5

59). By late 2007, substandard loans accounted for almost one-fifth of the Bank's outstanding loans, and almost ten percent of outstanding loans were past due. (Id. at ¶ 60, 61). As a result, the Bank was required to increase its loan loss reserves, thus impairing its working capital. On February 28, 2008, the Bank was placed under the regulatory supervision of the FDIC and went into receivership on August 29, 2008.

The Trustee alleges that Defendants, as officers of the Debtor and/or the Bank, "were responsible for ensuring that the Bank's real estate lending activities were appropriate, fiscally sound and in the best interest of the Debtor and Bank and their respective shareholders, creditors, and related interests." (Id. at ¶ 43). By breaching their fiduciary duties to the Debtor and Bank and operating the Bank in a negligent manner, the Defendants caused the Bank to make "unreasonably risky and unlawful loans and to suffer significant credit losses . . . resulting in substantial economic harm and injury to the Debtor and its shareholders, creditors, and related interests." (Id. at ¶¶ 79, 87). The Trustee further alleges that as a result of the breaches of fiduciary duty and negligent management of the Debtor and Bank by Defendants Skow and Long, the Debtor assumed approximately $34,000,000 in debt issuances from U.S. Bank and

AO 72A
(Rev.8/82)

Wilmington Trust, the repayment of which depended upon the profitable operation of the Bank. (Id. at 80, 88).

Defendants and the FDIC-R assert that the Trustee lacks standing to bring the asserted claims because the Trustee has only alleged derivative claims, which by law belong to the FDIC-R. Defendants and the FDIC-R also assert that the Complaint fails to meet the pleading standards of Rule 8 of the Federal Rules of Civil Procedure. The Court now takes up these arguments.

## Discussion

A.  Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient factual

AO 72A
(Rev.8/82)

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"³ Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

It is important to note that while the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. The

---

³ The Trustee cites GSW, Inc. v. Long County, 999 F.2d 1508, 1510 (11th Cir. 1993) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)), for the proposition that the appropriate standard at the motion to dismiss stage is "whether it appears beyond doubt that the plaintiff can prove no set of facts to support his claims." See Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Pl.'s Response") [Doc. 23] at 6; Plaintiff's Memorandum in Opposition to FDIC-R's Motion to Dismiss ("Pl.'s Response to FDIC") [Doc. 22] at 8. However, this standard was abrogated by the Supreme Court in Twombly, which stated:
> Conley's "no set of facts" language has been questioned, criticized, and explained away long enough . . . . after puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard . . ."

550 U.S. at 562-563. The "no set of facts" language has been rejected by the Supreme Court and is not the standard to be applied in determining whether Plaintiff's case survives the pending motions to dismiss.

8

court does not need to "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. In light of this standard, the Court now examines the Plaintiff's Amended Complaint for Damages to determine whether the pleading is sufficient to survive a motion to dismiss.

B.    Standing

The Defendants and the FDIC-R argue that the Trustee lacks standing to bring the claims set forth in the complaint because the asserted claims belong exclusively to the FDIC-R. The Financial Institution Reform, Recovery and Enforcement Act of 1989 ("FIRREA") states that the FDIC as receiver shall succeed to "all rights, titles, powers, and privileges of the insured depository institution, and of any *stockholder* . . . of such institution with respect to the institution and the assets of the institution. 12 U.S.C. § 1821(d)(2)(A)(i) (emphasis added). Thus, all shareholder derivative claims against officers of the Bank belong to the FDIC. See In re Se. Banking Corp., 827 F. Supp. 742, 745 (S.D. Fla. 1993), rev'd on other grounds by 69 F.3d 1539 (11th Cir. 1995) (stating FIRREA "specifically provides that such derivative claims belong exclusively to the FDIC"); see also FDIC v. American Cas. Co., 998 F.2d 404, 409 (7th Cir. 1993) ("As the receiver, the FDIC possesses all the rights of the Bank's shareholders including the rights to sue directors and officers."). In

9

order for the Trustee to have a viable claim against the Defendants, the claim must be based on actions of the Defendants that caused direct harm to the Debtor that is unique from harm caused to the Bank.

Whether a claim is direct or derivative is based on state law. In re Se. Banking Corp., 827 F. Supp. at 745. In Georgia "a shareholder must be injured in a way which is different from the other shareholders or independently of the corporation to have standing to assert a direct action." Grace Bros., Ltd. v. Farley Indus., Inc., 264 Ga. 817, 819, 450 S.E.2d 814, 816 (1994); see also Citibank, N.A. v. Data Lease Fin. Corp., 828 F.2d 686, 692 (11th Cir. 1987) ("It is an established rule that whenever a plaintiff sues in a stockholder capacity for corporate mismanagement, he must bring the suit derivatively.").

A scenario similar to the one presented here was examined in In re Se. Banking Corp., 827 F. Supp. 742 (S.D. Fla. 1993). In that case, the Plaintiff, a Chapter 7 trustee for a bankrupt bank holding company, sued officers and directors of a wholly owned subsidiary bank alleging breach of legal duties, negligence, and other charges. Id. at 744. In that case, as in this case, the FDIC intervened to assert sole and exclusive ownership of the claims asserted by the trustee. Id. In Se. Banking Corp. the district court found that the complaint was substantially dominated by derivative allegations rather than pleading distinct

10

harm to the holding company. Id. at 746. The court stated, "[t]here is no meaningful distinction between injury suffered by the holding company and the derivative claims of mismanagement, especially where [the holding company's] solvency and success were 'crucially dependent' on the Bank." Id. Therefore, the court dismissed the derivative claims set forth by the trustee. Id. at 747.

The same action is appropriate here. In order to have standing the Trustee must assert actions taken by Defendants that caused Integrity direct and unique harm, as opposed to harm that is derivative of harm to the Bank. See Pareto v. FDIC, 139 F.3d 696, 700 (9thCir. 1998) (dismissing action by shareholders against former directors of bank for "allegedly delivering a fatal blow to the bank" because such claims are derivative). However, all of the harm alleged by the Trustee occurred as a result of lending decisions made at the Bank level. See Complaint at 36-65 (discussing "Real Estate Lending," "Related Borrower Loans," "The Cada Madrona Hotel," and "Deterioration of Loan Portfolio"). The Complaint contains no similar allegations of any specific instances of negligence or malfeasance by Defendants for decisions made at the Debtor level. While some of the Defendants may have owed separate fiduciary duties to the Debtor and the Bank, the allegations set forth in the Complaint,

11

relate only to actions taken in the Defendants' roles as Bank officers.[4] Therefore, the Trustee has not asserted any direct loss to the Debtor as a result of the breach of duty or negligence of Defendants.

Harm caused to the Bank by Defendants likely resulted in harm to the Debtor as a shareholder of the Bank, but any such harm is secondary and predicated upon injury to the Bank. The Trustee has not alleged any claims of mismanagement of the Debtor holding company. While the Trustee added a discussion of the Debtor's capital raising efforts on behalf of the bank in the Complaint, such capitalization of the Bank does not make the harm alleged direct rather than derivative. The Trustee seems to implicitly recognize as much when he states in the Complaint that "the Debtor assumed approximately $34,000,000 under the U.S. Bank and Wilmington debt issuances, *the repayment of which depended upon Defendants' proper management and profitable operation of the Bank*." (Complaint at ¶ 23 (emphasis added)).

---

[4] Claims against Skeen and Ballard should be dismissed on the grounds that the Complaint does not allege that either were officers of the Debtor. Therefore, neither owed any direct fiduciary duties to the Debtor outside of the Debtor's status as a shareholder of the Bank. While the Complaint alleges that Ballard was a director of the Debtor (See Complaint at ¶ 33), the Trustee has brought claims against Defendants solely in their capacity as Officers of the Debtor and or Bank (See Complaint at ¶ 8).

AO 72A
(Rev.8/82)

Therefore any harm to the Debtor is not as a result of the decision to capitalize the Bank, but rather as a result of mismanagement of the Bank.[5]

The role of the Trustee as set forth in the bankruptcy code does not change this analysis.  Section 541 of the code establishes that a bankruptcy estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  The Trustee simply stands in the shoes of the Debtor and has the ability to bring any claim that the Debtor could have brought.  O'Halloran v. First Union Bank of Fla., 350 F.3d 1197, 1202 (11th Cir. 2003).  Once the FDIC-R became the receiver of the Bank, the Debtor no longer had the ability to bring derivative claims against officers of the Bank, because the FDIC-R succeeded to those claims.  The fact that the Debtor subsequently declared bankruptcy did not create in the Trustee any standing that the Debtor did not already possess.  Therefore, the Trustee does not have standing to bring the derivative claims alleged in the Complaint.

C.    Unsupported Assertions of "Direct and Unique Harm" do not Satisfy the Rule 8 Pleading Standard

---

[5] The harm alleged by the Trustee to the bank holding company is the same as that alleged in In re. Se. Banking Corp., to which that court remarked, "[t]here is no meaningful distinction between injury suffered by the holding company and the derivative claims of mismanagement, especially where [the holding company's] solvency and success were 'crucially dependent' on the Bank." 827 F. Supp. at 746.

13

The Trustee asserts in the Complaint that "[b]y virtue of the legal and financial relationship and dealings between the Debtor and Bank, the Debtor, its stockholders and related interests have suffered *direct and unique harm* as a result of the acts and omissions of the Defendants . . . ." (Complaint at ¶ 27 (emphasis added)).  As the Supreme Court noted in Twombly, while "detailed factual allegations" are not required, "labels and conclusions" are not sufficient to satisfy Federal Rule of Civil Procedure 8.  550 U.S. at 555.  As discussed above, the FDIC-R now possesses all the derivative claims of shareholders of the Bank.  In order for the Trustee to proceed, he must base his claims on direct harm to the Debtor.  However, simply stating that the Debtor suffered unique harm is not sufficient.

Whether the Trustee's claims are direct or derivative is a legal conclusion, not a factual one, and this Court is not required to accept as true legal conclusions asserted in a complaint.  Iqbal, 129 S. Ct. at 1949.  In order for the Trustee's complaint to survive a motion to dismiss, it must "state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  In order to do so, the Trustee must plead the factual content necessary for this Court to draw the reasonable inference that the Debtor suffered direct harm as a result of the Defendants actions.  The Complaint fails to do so.

14

AO 72A
(Rev.8/82)

This Court is not charged with determining whether there are any claims against the Defendants for which direct harm to the debtor could have been alleged, but whether such claims have actually been alleged in the Complaint. The only facts present in the Complaint concerning decisions made by Defendants at the Debtor level relate to the capitalization of the bank. (Complaint at ¶¶ 19-24). As to the capitalization of the bank, the only allegations asserted in the Complaint are that "[a]s a result of the breaches of the fiduciary duty by Defendants Skow and Long" and their "negligent mismanagement of the Debtor and the Bank," "the Debtor assumed approximately $34,000,000 under the U.S. Bank and Wilmington debt issuances . . . ." (Complaint at ¶¶ 80, 88). The Complaint does not factually describe how Defendants Skow and Long breached their fiduciary duty to the Debtor or were negligent in the Debtor's assumption of the U.S. Bank and Wilmington debt issuance. Without any factual details to support the claims that "direct and unique harm" to the Debtor was caused by Defendants, the Complaint has not met the Rule 8 pleading standard and should be dismissed.

Defendants' Motion to Dismiss Plaintiff's Amended Complaint for Damages [Doc. 20], and Plaintiff-in-Intervention's Motion to Dismiss Plaintiff's Amended Complaint for Damages [Doc. 19] are **GRANTED**.

15

## II.     Defendants' Motion to Dismiss Plaintiff's Complaint for Damages [Doc. 16]

After Defendants' Motion to Dismiss Plaintiff's Complaint for Damages [Doc. 16] was filed, Plaintiff filed a First Amended Complaint for Damages [Doc. 17].   In light of this Court's granting of Defendant's Motion to Dismiss the First Amended Complaint for Damages [Doc. 20] above, Defendant's Motion to Dismiss [Doc. 16] is **DENIED** as moot.

## Conclusion

For the foregoing reasons Plaintiff-in-Intervention's Motion to Dismiss Plaintiff's Amended Complaint for Damages [19] is **GRANTED**, Defendants' Motion to Dismiss Plaintiff's Amended Complaint for Damages [20] is **GRANTED**, and Defendants' Motion to Dismiss Plaintiff's Complaint for Damages [16] is **DENIED** as moot.

**SO ORDERED**, this   30th   day of November, 2009.


_____
**RICHARD W. STORY**
United States District Judge